U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2007 APR 27 A 9:35

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>MACTEC Engineering & Consulting, Inc.</u>

  v.                              Civil No. 06-cv-445-JD

<u>Gradient Corporation</u>

<u>O R D E R</u>

The claims in this case arise from the parties' interactions in connection with the remediation of groundwater contamination at a "Superfund Site" in Milford, New Hampshire. MACTEC Engineering & Consulting, Inc., moves to compel Gradient Corporation to join an ongoing arbitration proceeding, involving MACTEC, Hitchiner Manufacturing Co., Inc., and Thomas & Betts.[1] Gradient opposes MACTEC's motion.

<u>Standard of Review</u>

The Federal Arbitration Act provides that when a party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," that party may petition a federal district court for an order compelling arbitration. 9 U.S.C. § 4. Neither the FAA nor the

---

[1]MACTEC has filed an amended complaint in which it adds GradCo, LLC, as a defendant, doing business as Gradient Corporation.

First Circuit provides a standard for assessing a moving party's factual showing to support a motion to compel.[2]  Other courts, including a district court within the First Circuit, have used the summary judgment standard of review.  See Boulet v. Bangor Sec., Inc., 324 F. Supp. 2d 120, 123 (D. Me. 2004); see also S. & G Elec., Inc. v. Normant Sec. Group, Inc., 2007 WL 210517 at *2 (E.D. Pa. Jan 24, 2007).  The parties have both submitted and relied on documents beyond the complaint.  Under these circumstances, the court will apply the summary judgment standard.[3]

---

[2]In contrast, "'abstract questions as to whether particular disputes do (or do not) come within the four corners of an expressly limited arbitration provision are legal in nature'" and are considered on their merits alone.  Intergen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003) (quoting Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 18-19 (1st Cir. 2000)).

[3]In a footnote, MACTEC requested an opportunity to supplement its motion "should the Court deem it appropriate."  Pl. Mem. at 1, n.2.  MACTEC states in its reply memorandum that "[g]iven the uncertainty about the state of the evidentiary record before the court MACTEC asks that this court either (1) decide the case on the basis of the pleadings and exhibits before it, including [an affidavit aimed at Gradient's objection to the authenticity of some previously submitted documents], or (2) schedule a hearing to develop the evidentiary record and decide any disputes as promptly as possible . . . .  MACTEC prefers the former option, but if the Court cannot decide any issue of fact on the record before it, MACTEC should have the opportunity to respond."  Reply at 2-3.
     MACTEC has had more than sufficient opportunity to present its arguments and evidence in support of its motion to compel

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

---

arbitration. No supplementation or further opportunity to respond would be appropriate in this case.

## Background

MACTEC entered an agreement with Hitchiner Manufacturing Co., Inc., and Thomas & Betts Corporation ("the Settling Parties") in 1994 to provide technical consulting services for a remediation system at the Savage Well Superfund Site in Milford, New Hampshire.[4]  The agreement includes an arbitration clause. Gradient was not a party to and never signed the agreement between MACTEC and the Settling Parties.[5]

From 1994 until 2001, MACTEC was the project coordinator and supervising contractor.  In early 2001, the Settling Parties contacted Gradient about providing services at the Savage Well site.  After Gradient had begun work on the project, they formalized their agreement in a letter dated July 9, 2001, that was signed by representatives of Gradient and the Settling Parties.  The agreement provided that Gradient was retained, "on a time and materials basis," to assist "in understanding technical issues and developing technical approaches related to the requirements imposed upon [the Settling Parties] by the Environmental Protection Agency and the New Hampshire Department

---

[4]The parties's use of the term "Settling Parties" apparently is based on a consent decree between the Environmental Protection Agency and Hitciner and Betts, pertaining to that site.

[5]MACTEC is the successor to Environmental Science & Engineering, Inc., that contracted with the Settling Parties.

of Environmental Services, pursuant to a federal Consent Decree pertaining to the so-called Savage Well Superfund Site."  Shifrin Aff. Ex. A.  An attachment to the letter, referenced in the letter, provided additional terms, including a provision that Gradient would operate as an independent contractor.

The new arrangement was communicated to MACTEC in a memorandum, dated June 12, 2001, from the Settling Parties' attorneys.  In that memorandum, MACTEC was informed that Gradient would take the lead role and that MACTEC would serve as the field engineer on the project.  The memorandum also directed MACTEC to take direction from Gradient but to submit its invoices as it had previously done.  The Settling Parties notified the EPA that Gradient had become the Project Coordinator and that MACTEC would act as the Supervising General Contractor and provided assurances that the new parties would "work cohesively."

The remediation system began to operate in October of 2004 but then failed and was shut down by the Settling Parties in December of 2004.  The Settling Parties discharged MACTEC and hired a new firm to take its place.  The disputes between MACTEC and the Settling Parties have been in arbitration since early 2006.  Gradient refuses to participate in the arbitration proceeding.

Discussion

To compel a recalcitrant party to arbitrate, the movant "must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). MACTEC asserts that Gradient should be compelled to arbitrate MACTEC's claims against it in the arbitration proceeding with the Settling Parties.[6] Gradient objects on the ground that no arbitration agreement exists between it and MACTEC and the arbitration agreement between MACTEC and the Settling Parties is not binding on Gradient. MACTEC acknowledges that no arbitration agreement exists between it and Gradient but argues that the arbitration clause in its agreement with the Settling Parties is binding on Gradient based on theories that Gradient was the agent of the Settling Parties, that MACTEC's claims against Gradient are inextricably entwined with the claims in the arbitration proceeding, and that Gradient is estopped from avoiding arbitration.

---

[6] MACTEC filed a complaint against Gradient in which it sought an arbitration order and brought claims for indemnification, contribution, negligent misrepresentation, "innocent misrepresentation," and negligence, and sought a declaratory judgment.

6

A.  Agency

"An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound." Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006).  "But the requirements for such vicarious responsibility are exacting:  not only must an agency arrangement exist so that one party acts on behalf of the other and within the usual agency principles, but the arrangement must be relevant to the legal obligation in dispute." InterGen, 344 F.3d at 147-48 (internal quotation marks omitted).  Under New Hampshire law, which MACTEC offers as the governing standard, "[t]he necessary factual elements to establish agency involve:  (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control of the agent's actions."[7] Boynton v. Figueroa, 913 A.2d 697, 707 (N.H. 2006).

MACTEC bears the burden to prove that Gradient was the Settling Parties' agent in order to impose the arbitration obligation on Gradient.  When the moving party bears the burden

---

[7] In contrast, because uniform federal standards are appropriate in deciding questions under chapter two of the FAA, federal common law governs.  InterGen, 344 F.3d at 143. Nevertheless, a choice of law is not necessary here as "federal common law incorporates general principles of contract and agency law."  Id. at 144.

of proof, summary judgment will not be granted unless, based on the record taken in the light most favorable to the nonmoving party, no reasonable jury could find for the nonmoving party. See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002); Winnacunnet v. Nat'l Union, 84 F.3d 32, 35 (1st Cir. 1996). MACTEC has not met that burden.

In support of its agency theory, MACTEC states that "the Settling Parties selected Gradient to act as their express agent and representative in dealing with MACTEC." Pl. Mem. at 15. Following that conclusion, MACTEC makes several statements that are unsupported by citations to the record and, as a result, are not considered. MACTEC cites parts of the June 12, 2001, memorandum to MACTEC from the Settling Parties and a part of Gradient's proposal to the Settling Parties. The cited passages, however, state that Gradient would direct MACTEC in the project and explain Gradient's responsibilities, but suggest nothing about authorization to act as an agent.

The cited statements do not show that the Settling Parties "expressly" designated Gradient to act as their agent. To the contrary, the agreement between Gradient and the Settling Parties includes a provision that expressly designates Gradient as an independent contractor. Although circumstances might prove that

an agency relationship existed despite the independent contractor provision, MACTEC ignored that provision and has not shown that Gradient was the Settling Parties' agent. Therefore, the agency argument fails.

B. <u>Inextricably Entwined Claims</u>

MACTEC contends that Gradient is bound by the Settling Parties' arbitration clause because MACTEC's claims against Gradient are inextricably entwined with the claims in the arbitration proceeding. In support of that theory, MACTEC relies on <u>McBro Planning & Dev't Co. v. Triangle Elec. Constr. Co., Inc.</u>, 741 F.2d 342 (11th Cir. 1984). In that case, McBro sought to compel Triangle to arbitrate claims brought by Triangle based on arbitration agreements each of them had with a third party, the hospital. <u>Id.</u> Although no arbitration agreement existed between McBro and Triangle, Triangle's claims asserted that McBro breached its duties under its contract with the hospital, which included an arbitration agreement. <u>Id.</u> at 344. As a result, the court concluded that Triangle was estopped from avoiding arbitration. <u>Id.</u>

Importantly, in <u>McBro</u>, Triangle also signed an arbitration agreement with the hospital. Courts that have considered whether parties may be compelled to arbitrate based on a related

9

arbitration agreement have concluded that non-signatories cannot be so bound.  See E.I. DuPont De Nemours v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 201-02 (3d Cir. 2001) (citing McBro and discussing related cases).  Because Gradient did not sign an arbitration agreement with MACTEC or the Settling Parties, the theory applied in McBro is inapposite here.

C.  Estoppel

MACTEC urges that Gradient should be estopped from avoiding the arbitration agreement between MACTEC and the Settling Parties because Gradient received benefits under that contract.  "[T]he doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations."  InterGen, 344 F.3d at 145.  In this context, enjoying the rights and benefits under a contract means that the party to be estopped has "consistently maintained that other provisions of the same contract should be enforced to benefit him."  Id. (internal quotation marks omitted).

To support an estoppel theory, MACTEC relies on an application of "direct benefit" estoppel in Am. Bur. of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 (2d Cir. 1999).  In Tencara, a group of investors ("the Owners") contracted with

10

Tencara Shipyard to build a racing yacht. Id. at 351. That agreement required that the yacht would be "classed" as approved by the American Bureau of Shipping ("ABS"). Tencara entered an agreement with ABS for classification, and that agreement included an arbitration clause. Id. When the yacht was damaged, allegedly due to poor design and construction, the Owners' insurers provided coverage, and the Owners, insurers, and Tencara sued ABS. Id. ABS then brought suit to compel Tencara, the Owners, and the insurers to arbitrate the claims, which was granted as to Tencara only. Id. at 352.

On appeal, the Second Circuit concluded that the Owners were estopped from denying the contract containing the arbitration clause because they had received direct benefits from that contract. Id. at 353. Specifically, the court found that the Owners had lower insurance rates on the yacht and were allowed to sail under the French flag because the yacht was "classed" pursuant to the contract. Id. Further, the Owners bore the responsibility to register the yacht, and the contract between Tencara and ABS, which included the arbitration clause, fulfilled that responsibility for the Owners. Id.

MACTEC asserts that Gradient benefitted from MACTEC's contract with the Settling Parties because Gradient "relied on information and cooperation that MACTEC was obligated to provide"

11

under that agreement.  Pl. Mem. at 21.  Specifically, MACTEC asserts that Gradient used MACTEC's engineers "to stamp plans, perform field engineering work, and other services" and co-authored "numerous critical project documents with MACTEC."  Id. MACTEC contends that those "benefits" are analogous to the benefits that were the basis for compelling arbitration in Tencara.

    While MACTEC may have been obligated to do the cited services under its contract with the Settling Parties, a point that is not well-substantiated here, MACTEC has not demonstrated that Gradient benefitted from those services.  In Tencara, the Owners directly benefitted from the classification agreement because, when that agreement was performed, they saved money on insurance and could sail the yacht under the French flag.  Here, the services MACTEC provided for the remediation project benefitted the Settling Parties, who contracted for those services, not Gradient.  The mere fact that Gradient and MACTEC worked together on the remediation project does not show that MACTEC provided a benefit to Gradient.  In the absence of a direct benefit to Gradient from the agreement between the Settling Parties and MACTEC, no estoppel arises.

D.  <u>Arbitration</u>

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  <u>InterGen</u>, 344 F.3d at 142 (quoting <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986)).  In the absence of a binding agreement to arbitrate, a party may be compelled to arbitrate only when particular circumstances would otherwise impose that obligation.  <u>See</u> <u>id.</u> at 144-50.  MACTEC has not shown that any viable basis exists to compel Gradient to arbitrate the claims MACTEC has alleged here.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to compel arbitration (document no. 3) is denied.  In the absence of an order compelling arbitration, the plaintiff's motion to stay litigation (document no. 3) is moot.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

April 27, 2007

cc: Daniel P. Luker, Esquire
    Sigmund D. Schutz, Esquire
    Paul S. Samson, Esquire
    Robert J. Gallo, Esquire